

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

March 9, 1976

The Honorable Charles R. Barden
Executive Director
Texas Air Control Board
8520 Shoal Creek Boulevard
Austin, Texas 78758

Opinion No. H-792

Re: Responsibility of
the Air Control Board in
certifying control facil-
ities under the Clean Air
Financing Act.

Dear Mr. Barden:

You have requested our opinion on a number of questions
regarding the Clean Air Financing Act, article 4477-5a, V.T.C.S.
In this regard you ask:

> 1. What is the significance of the use
> of the term 'air pollution' rather than
> 'air contaminant' in the definition of
> 'control facilities?'

> 2. May the Board certify a portion or
> percentage of a facility as a 'control
> facility?'

> 3. May the Board certify as a 'control
> facility' a facility which requires a
> permit to construct under section 3.27
> of the Texas Clean Air Act, article
> 4477-5, V.T.C.S.?

> 4. May the Board certify as a 'control
> facility' a facility designed to reduce
> emissions from a proposed, but not yet
> constructed, source of air contaminants?

"Control facilities" is defined in the Clean Air Financing Act as

> facilities designed to reduce or elimi-
> nate air pollution which have been so
> certified by the Texas Air Control
> Board or by its executive secretary as
> may be authorized by the Texas Air
> Control Board. V.T.C.S. art. 4477-5a,
> § 3(2).

The Act states that "air pollution " and "air contaminant" have the same meanings as in the Texas Clean Air Act. Sec. 3(1). The Clean Air Act defines "air contaminant" as

> particulate matter, dust, fumes, gas,
> mist, smoke, vapor or odor, or any
> combination thereof produced by pro-
> cesses other than natural. . . .
> V.T.C.S. art. 4477-5, § 1.03(1).

"Air pollution" means

> the presence in the atmosphere of one
> or more air contaminants or combinations
> thereof, in such concentration and of such
> duration as are or may tend to be injurious
> to or to adversely affect human health or
> welfare, animal life, vegetation or property,
> or as to interfere with the normal use and
> enjoyment of animal life, vegetation or
> property. . . . V.T.C.S. art. 4477-5,
> § 1.03(3).

It is clear that the concept of "air pollution" is narrower in scope than that of "air contaminant." In order to qualify as "air pollution," an "air contaminant" must be present in the atmosphere, and "in such concentration and of such duration" as "to be injurious to or to adversely affect human health or welfare, animal life, vegetation or property,

or as to interfere with the normal use and enjoyment of animal life, vegetation, or property." Thus, the Board is permitted to certify as a "control facility" only those facilities which are "designed to reduce or eliminate air pollution," as that term is defined in the Texas Clean Air Act.

Your second question asks whether the Board may certify a portion or percentage of a facility as a "control facility." Section 14 of article 4477-5a provides:

> In certifying facilities as control facilities the Texas Air Control Board may prescribe necessary criteria and procedures for such certification and can limit such certification to confirming that the proposed facility is intended for the purpose of controlling air pollution. No certification as to the adequacy of the facility or its expected performance or other specifications shall be necessary.

The statute provides, in section 13, that

> [n]otwithstanding the provisions of this section, it is further provided that nothing in this Act shall in any way limit or diminish the power and authority of the Texas Air Control Board or of a local government to enact and enforce rules and regulations and to carry out other duties authorized by the Texas Clean Air Act, as amended. . . .

One of the duties which the Clean Air Act imposes upon the Board is to

> seek the accomplishment of the purposes of this Act through the control of air contaminants by all practical and economically feasible methods consistent with the powers and duties of the board.

> The board has the powers and duties
> specifically prescribed in this Act
> and all other powers necessary or
> convenient to carry out its responsi-
> bilities. V.T.C.S. art. 4477-5, § 3.01.

In addition, the Clean Air Act provides that

> [e]xcept as provided in Subsections (c),
> (d), (e) and (f) of this section, the
> rules and regulations may not specify
> any particular method to be used to
> control or abate air pollution, nor the
> type, design or method of installation
> of any equipment to be used to control
> or abate air pollution, nor the type,
> design, or method of installation or
> type of construction of any manufacturing
> processes or other kinds of equipment.
> V.T.C.S. art. 4477-5, § 3.10(b).

You advise that many facilities serve a dual purpose. One purpose is the production of a salable product, which production would incidentally result in the creation of air pollution. The other purpose is the abatement and control of that pollution. Should the Board determine that a dual purpose facility is the most practical and economically feasible means of accomplishing the control of air pollution, we believe that it may further that purpose by partial certification of the facility. The prohibition of section 3.10(b) supports this conclusion, since a refusal of partial certification to a dual purpose facility would necessarily cause the Board to specify a "particular method to be used to control or abate air pollution."

You also ask whether a facility which requires a construction permit under section 3.27 of the Clean Air Act may be certified as a "control facility." No provision of the Clean Air Financing Act indicates that there is any relationship between certification and the issuance of construction permits. Thus, it is our opinion that a facility may be certified as a "control facility" without regard to its posture under section 3.27 of the Clean Air Act.

Your final question is whether the Board may certify a facility designed to reduce emissions from a proposed, but not yet constructed, source of air contaminants. We note the absence of any direct or implied prohibition against the certification of proposed facilities. Furthermore, the statement of purpose contained in the Clean Air Financing Act argues strongly for the view that the Legislature was concerned about future, as well as present, sources of air pollution:

> It is hereby determined by the legislature and also declared to be the policy of this state that the control of air pollution is essential to the well-being and survival of its inhabitants and the protection of the environment, and that specifically the control, prevention, and abatement of air pollution are and <u>will be</u> for the specific purpose of the conservation and development of the natural resources of the state, within the meaning of Article XVI, Section 59(a), of the Texas Constitution, through the prevention of further damage to or destruction of the environment, resulting in further conservation and development of such natural resources. V.T.C.S. art. 4477-5a, § 2(b). (Emphasis added).

Accordingly, we conclude that the Board may certify as a "control facility" a facility designed to reduce emissions from a proposed, but not yet constructed, source of air contaminants if the source is likely to result in air pollution in the absence of the control facility.

## S U M M A R Y

> The Texas Air Control Board may certify as a "control facility" only those facilities which are "designed to reduce or eliminate air pollution," as that term

is defined in the Texas Clean Air Act, article 4477-5, V.T.C.S. The Board may certify a portion or percentage of a facility as a "control facility." In addition, it may certify a facility which requires a construction permit, as well as a facility designed to reduce emissions from a proposed, but not yet constructed, source of air contaminants.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb